UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

RONALD COLLINS, JR.,

        Plaintiff,                         Civil Action No. 5:17-CV-01330

v.

KRISTEN KELLER, RALEIGH COUNTY
PROSECUTING ATTORNEY,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is ***Defendant Kristen Keller's Motion to Dismiss the Plaintiff's Complaint*** (ECF No. 14), and Plaintiff's ***Motion for Summary Judgment***. (ECF No. 20) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3) Having examined Plaintiff's Complaint, the undersigned has concluded that Plaintiff fails to state a claim for which relief can be granted in this matter and therefore respectfully recommends that Defendant's ***Motion*** be granted, that Plaintiff's ***Motion*** be denied, and that this matter be dismissed with prejudice.

## PROCEDURAL AND FACTUAL BACKGROUND

On February 21, 2017[1], Plaintiff, acting *pro se*, filed a Complaint claiming entitlement to relief under 42 U.S.C. § 1983.[2] (ECF No. 2) Plaintiff sues Defendant Kristin Keller, Prosecuting

---

[1] Plaintiff contemporaneously filed with his Complaint an application to proceed without prepayment of fees or costs (ECF No. 1), but then subsequently paid the filing fee of $400 on September 6, 2017. (ECF No. 6)

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Attorney for Raleigh County, for having "brought a false charge against me for terroristic threats [and] during the proceeding withheld the information related to the case in violation of W. Va. Law 27-6A-2(b)(1)(2)(4) to conceal a history of false arrest, harassment [and] assault and battery and kidnapping under color of law, resulting in a violation of rights." (Id.) Plaintiff also alleges that during the criminal proceedings, Defendant caused "Dr. [Bobby] Miller to file a false report" that resulted in his hospitalization at William Sharpe Hospital where he was "tortured with forced medication." (Id.) In addition to the violation of his federal and state constitutional rights, Plaintiff alleges that he experienced psychological trauma, "undiagnosed" PTSD and treated at the Beckley VAMC; he also claims slander and defamation "as a result of false evidence of a history of a fraudulent legal process, abuse, and connects to organized crime by members of the police and Raleigh County Judiciary." (Id.) As relief, Plaintiff requests twenty-five million dollars, and "release of all legal documents pertaining to past abuses at state's expense." (Id.)

On February 5, 2018, Plaintiff filed documents that this Court construed as a motion for issuance of service of process. (ECF Nos. 8, 9) Pursuant to the undersigned's Order, Defendant was served by the U.S. Marshal and subsequently filed her ***Motion to Dismiss*** and supporting ***Memorandum*** on March 5, 2018. (ECF Nos. 14, 15) That same day, the undersigned issued a Roseboro[3] notice to Plaintiff directing him to file his response to Defendant's ***Motion***. (ECF No. 16) On March 15, 2018, Plaintiff filed his ***Response*** and supporting ***Memorandum***, as well as his ***Motion for Summary Judgment***. (ECF Nos. 18, 19, 20) On March 22, 2018, Defendant filed her ***Reply*** (ECF No. 21), and on March 29, 2018, she filed her ***Response*** to Plaintiff's ***Motion for Summary Judgment***. (ECF No. 22) On April 6, 2018, Plaintiff filed his ***Response to the***

---

[3] Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975); because Plaintiff is acting *pro se*, the Court issued an Order notifying Plaintiff of his right to file a response to Defendant's ***Motion*** and further ordered that Plaintiff file any response with the Clerk of this Court. (ECF No. 16)

***Defendant's Reply to the Plaintiff's Response to the Defendant's Motion to Dismiss*** and on April

20, 2018, he filed his ***Reply to Defendant's Response to Plaintiff's Motion for Summary***

***Judgment***.[4] (ECF Nos. 27, 30) Accordingly, this matter is fully briefed and ripe for decision.

## Defendant's Argument for Dismissal

Defendant cites several grounds in support of dismissal of this civil action. For starters, as

the Prosecuting Attorney for Raleigh County, she is entitled to absolute prosecutorial immunity

from Section 1983 claims pursuant to Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d

128 (1976). (ECF No. 15 at 3) Defendant contends that this immunity is not qualified, as the United

States Supreme Court has recognized that it would weaken the criminal justice system where

prosecutors would not pursue actors that violate the law, and further, there are post-trial measures

available to a criminal defendant to ensure that he is treated fairly. (Id. at 3-4)

Alternatively, even if Defendant is not entitled to absolute immunity, she is entitled to

qualified immunity from all of Plaintiff's claims, which would include her administrative and

investigative functions as a state prosecutor. See Buckley v. Fitzsimmons, 509 U.S. 259 (1993).

(Id. at 5) Defendant is immune from suit because her conduct did not violate clearly established

statutory or constitutional rights of which a reasonable person would have known. Crosby v. City

of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011). (Id. at 5-6)

With regard to Plaintiff's claim for defamation, Defendant asserts that he has failed to

allege any facts to support this claim under the pleading standards espoused by Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 127 S.Ct. 1995, 1964-5, 167 L.Ed.2d 929 (2007) and Ashcraft v. Iqbal,

556 U.S. 662 (2009). (Id. at 7-8). Defendant points out that Plaintiff has presented only conclusory,

threadbare allegations that his 4th, 5th, 8th, and 14th amendment rights were violated and that he was

---

[4] To the extent that Plaintiff has moved this Court for a fifteen day extension in order to file his ***Reply*** to Defendant's ***Response*** to Plaintiff's ***Motion for Summary Judgment***, the Court **GRANTS** his request as **MOOT**. (ECF No. 26)

a victim of assault and battery, and that he failed to properly plead that false charges were brought against him or specify when such charges were brought. (Id. at 9)

Finally, Defendant argues that Plaintiff's claims are time-barred; he provided no dates for when these alleged offenses occurred, but only stating that these events occurred from February 20, 2014 to September 11, 2016 and that some of his claims arise out of a 2013 indictment. (Id. at 10) Since there is no federally prescribed statute of limitations, the state of West Virginia's statute of limitations applies[5], and since West Virginia has no statute of limitations specifically applicable to civil rights violations claims, the West Virginia limitation for personal injury claims applies[6], therefore, a two-year statute of limitations applies to Plaintiff's Section 1983 claims. (Id.) Defendant further demonstrates that the applicable period of limitations for a claim of false arrest, false imprisonment, and malicious prosecution and actions for slander are all subject to a one-year statute of limitations.[7] (Id.)

Defendant asks that this Court grant her ***Motion to Dismiss***, with prejudice. (Id. at 11)

In response, Plaintiff contends that prosecutorial immunity does not include the commission of a felony, pursuant to W. Va. Code § 61-5-27A.[8] (ECF No. 18 at 1) Further, Plaintiff

---

[5] Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).

[6] W. Va. Code § 55-2-12(b).

[7] Wilt v. State Auto. Mut. Ins. Co., 203 W. Va. 165, 170, 506 S.E.2d 608, 613 (1998); Snodgrass v. Sisson's Mobile Home Sales. Inc., 161 W. Va. 588, 244 S.E.2d 321 (1978); Fleiming v. West Virginia, 2009 WL 960217 (S.D.W. Va. 2009); W. Va. Code § 55-2-12(c); and Cavendish v. Moffitt, 163 W. Va. 38, 253 S.E.2d 558 (1979), respectively. (ECF No. 15 at 10)

[8] As noted *supra*, Plaintiff filed contemporaneously with his ***Response*** a ***Memorandum of Law in Support*** of same (ECF No. 19) that restates his arguments contained in his ***Response***, but also includes numerous attachments: (1) copies of W. Va. Code §§ 27-6A-1-3; (2) a copy of the Raleigh County Circuit Court criminal case number 14-F-13-B Agreed Order of dismissal without prejudice, entered on September 11, 2015 by the Honorable Robert A. Burnside, Jr.; (3) a copy of the Raleigh County Circuit Court criminal case numbers 12-F-470/471, 12-B-234, 13-F-1026, 13-B-410, 13-PCR-929-K Order, entered on December 30, 2013 by the Honorable H.L. Kirkpatrick III that pertains to the bond reduction hearing conducted on December 3, 2013 indicating that the circuit court denied Plaintiff's motion for reduction of bond and ordered Dr. Bobby Miller to conduct a re-evaluation of Plaintiff's psychological condition; (4) a copy of W. Va. Code §§ 61-5-27a, 55-2-12, 55-7-8a; (5) a copy of an article published by the Register-Herald Reporter on April 15, 2014 reporting Plaintiff's arrest for making terrorist threats, his court-ordered hospitalization until he retained competency to stand trial, as well as highlights of Dr. Miller's opinions provided in his evaluation of Plaintiff, and the Defendant's motion asking the circuit court to have Plaintiff committed to William Sharpe Hospital pending his attainment of competency in order to participate in his legal proceedings; (6) a couple of pages from the

argues that "statements made to the Press were held outside of the Judicial Phase, also that Doctor Miller's findings were obtained outside of the Judicial Phase." (Id.) Plaintiff reasserts that his 8th Amendment rights were violated when he was committed to William A. Sharpe Hospital upon "fabricat[ed] evidence" and that he suffered from "psychological and pharmace[ut]ical abuses for a mental instability he did not suffer from." (Id.) Plaintiff asserts that Defendant's actions "would have denied the Plaintiff Due Process of the Law" with respect to the provision under W. Va. Code § 27-6A-3(h) that provides that a "defendant shall remain under a court's jurisdiction until the expiration of the maximum sentence unless the defendant obtains competency to stand trial and the criminal charges reach resolution or the court dismisses the indictment or charge." (Id.)

With respect to the pleading standards under Twombly and Iqbal, Plaintiff reasserts that Defendant violated both W. Va. Code §§ 61-5-27A and 27-6A-2(b). Plaintiff appears to request that this Court conduct hearings and subpoena three witnesses who would be able to support his claims against Defendant: Robert Dunlap, Esq.; Dr. Bobby Miller; and Paul Flanagan, Raleigh County Circuit Court Clerk.[9] (Id. at 2) Further, Plaintiff contends that he filed his claim within the two-year statute of limitations, and appears to assert that because Defendant's conduct is criminal, that W. Va. Code § 55-7-8a has no statute of limitations. (Id.)

In reply, Defendant restates that she is entitled to absolute immunity and asserts that Plaintiff does not demonstrate how she violated W. Va. Code § 61-5-27. (ECF No. 21 at 1) In addition, Defendant denies committing any fraudulent acts during Plaintiff's hearing on the psychological evaluation. (Id.) Defendant points out that Plaintiff's entire Complaint revolves

---

Forensic Psychiatry Evaluation report provided by Dr. Bobby Miller, dated February 25, 2014, finding Plaintiff not competent to stand trial; and (7) a copy of one page of the search warrant concerning Plaintiff's alleged terroristic threats committed in August 2013 in Raleigh County.

[9] The undersigned notes that the certification seal on both of the aforementioned orders entered in the Raleigh County Circuit Court bears the name of Paul Flanagan as the Clerk of the Circuit Court; it is further noted that based on the attached documentation in Plaintiff's ***Memorandum*** (ECF No. 19), Robert Dunlap, Esq. was Plaintiff's criminal defense attorney during the proceedings before the Raleigh County Circuit Court.

around his psychological evaluation as well as the filing and arguments of motions associated with that evaluation. (Id. at 2) Therefore, Defendant enjoys absolute immunity because her actions were intimately associated with the judicial phase of the criminal process per Dababnah v. Keller-Burnside, 208 F.3d 467, 471 (4th Cir. 2000), and further, she cannot be held liable for defamatory statements made during the course of and relevant to those judicial proceedings per Burns v. Reed, 500 U.S. 478 (1991). (Id.) Alternatively, Defendant reasserts that she is still entitled to qualified immunity and that Plaintiff has not properly plead how she committed fraud. (Id. at 3)

With regard to Plaintiff's claim of defamation, Defendant states that he has not shown any specific statements supposedly made by Defendant to the Register-Herald or to any other media outlet that were defamatory; the Register-Herald article merely reported what Defendant wrote in her motion during the underlying criminal proceedings. (Id. at 4) Defendant argues that Plaintiff still fails to meet the pleading standards pursuant to Rule 8 of the Federal Rules of Civil Procedure as delineated in Twombly and Iqbal. (Id.) He provides no specific factual allegations as to how Defendant violated the West Virginia Code, and has further failed to demonstrate how Defendant violated Plaintiff's 4th, 5th, 8th, and 14th Amendment rights, as he merely provides "formulaic recitations" of those constitutional provisions. (Id. at 5) Further, where Plaintiff has alleged unlawful arrest, imprisonment, or prosecution, those claims fall under the 4th Amendment, not the 14th. Suydam v. Pennsylvania State Police, No. 3:15-cv-00081, 2017 WL 620955, at *3 n.2 (M.D. Penn. Feb. 15, 2017); See Souk v. City of Mount Hope, No. 2:14-cv-26442, 2015 WL 5698509, at *6 (S.D.W. Va. Sept. 28, 2015). (Id.)

Defendant reasserts that Plaintiff's claims are time-barred, and his allegations of fraud under W. Va. Code § 61-5-27 to circumvent the statute of limitations issue should not be considered because this was not initially plead in his Complaint; further, Plaintiff's argument that

fraud has no statute of limitations in West Virginia is legally incorrect.[10] (Id. at 5-6)

Turning to the documents attached to Plaintiff's ***Response***, Defendant notes that the allegations subject to Plaintiff's Complaint concern a hearing held on December 3, 2013, and the Order memorializing that hearing was entered on December 30, 2013, therefore, Plaintiff had to file his civil rights claims by December 3, 2015 and December 30, 2015, respectively. (Id. at 6) As to Plaintiff's reference to Dr. Miller's evaluation report, which is dated February 25, 2014, Plaintiff would have had until February 25, 2016 to bring any civil rights claims arising out of that report. (Id.) With regard to Plaintiff's defamation claim, he attached the Register-Herald article, published on April 15, 2014, therefore, Plaintiff would have had to file his defamation suit by April 15, 2015 per Cavendish v. Moffitt, 163 W. Va. 38, 253 S.E.2d 558 (1979). (Id.) Because Plaintiff filed his Complaint on February 21, 2017, all these claims are time-barred. (Id.)

Defendant renews her request that her ***Motion*** be granted. (Id.)

Plaintiff responds to Defendant by stating that he has shown the "physical evidence" of her violation of W. Va. Code § 61-5-27A[11] by his pleadings herein, and references the arrest and search warrants, as well as the court order for re-evaluation and other documents related to the criminal matters in case number 13-F-1026. (ECF No. 27 at 1-2) Because Defendant did not provide Dr. Miller with a copy of the warrant or indictment, a copy of Plaintiff's criminal history, or any information relevant to case number 13-F-1026, Defendant violated W. Va. Code § 27-6A-2, and therefore procured a fraudulent psychological evaluation. (Id. at 3) Plaintiff contends that Defendant's criminal conduct involved the participation of Judge Burnside, Plaintiff's then court-

---

[10] See W. Va. Code § 55-2-12; Trafalgar House Const., Inc. v. ZMM, Inc., 211 W. Va. 578, 583, 567 S.E.2d 294 (2002).
[11] Plaintiff distinguishes between W. Va. Code §§ 61-5-27 and 61-5-27A: because he is a non-state employee, Section 27A applies to him, and protects him from fraudulent legal filings, official proceedings and the threat of such filings and proceedings. (ECF No. 27 at 3)

appointed counsel, Robert Dunlap, Esq., Dr. Bobby Miller, the court reporter, and the bailiffs. (<u>Id</u>.) Plaintiff further argues that in addition to having his statutory and constitutional rights violated by Defendant, as espoused under <u>Pulliam v. Allen</u>, 466 U.S. 522 (1984)[12], he also claims that Defendant's actions violated his 2nd Amendment rights when she caused him to be committed under W. Va. Code § 27-6A-2. (<u>Id</u>. at 4-5) Plaintiff states that he is presently incarcerated due to Defendant's violations of the subject state statutes. (<u>Id</u>. at 5) Plaintiff contends that these violations demonstrate that Defendant is neither entitled to absolute immunity nor qualified immunity, as it is clear that Defendant's failure to comply with W. Va. Code § 27-6A-2 violated his statutory and constitutional rights. (<u>Id</u>. at 6-8) Plaintiff insists that Defendant defamed him by making statements to the Register-Herald and that she caused Dr. Miller to write a fraudulent report. (<u>Id</u>. at 8)

Plaintiff asserts he complied with Rule 8 as espoused under <u>Twombly</u> and <u>Iqbal</u> and refers to the documents (described *supra* in fn. 8 to this Proposed Findings and Recommendation) he attached to his ***Memorandum***. (<u>Id</u>. at 9-11) Plaintiff also contends that he was unaware that his 2nd Amendment right to keep and bear arms was violated by Defendant until he was charged and arrested by the federal government in Greenbrier County. (<u>Id</u>. at 11) Plaintiff reasserts that his 4th Amendment rights were also violated due to Defendant's fraudulent filings by withholding those items from Dr. Miller required for the psychological evaluation, which resulted in a wrongful finding that Plaintiff was incompetent to stand trial, which resulted further in his unlawful commitment to William Sharpe Hospital. (<u>Id</u>. at 11-12) These events caused Plaintiff to be deprived of his rights to due process, life, liberty and property. (<u>Id</u>. at 12-13)

With regard to the statute of limitations, Plaintiff reasserts that his fraud claims are not

---

[12] The undersigned notes that this case pertains to a state magistrate who committed individuals to jail for non-jailable misdemeanors when they were unable to meet bail she imposed. The United States Supreme Court held that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity and that judicial immunity is no bar to an award of attorneys fees under Section 1988.

time-barred. (Id. at 14) Plaintiff then suggests that defense counsel is trying to mislead this Court by citing the improper statute, W. Va. Code § 61-5-27, which pertains to public officers and employees, which he is not. (Id. at 14-15)

Plaintiff argues that Defendant has not addressed the evidence he attached to his ***Memorandum*** and further argues that they show Defendant violated his statutory rights pursuant to W. Va. Code §§ 27-6A-2 and 61-5-27. (Id. at 15-17)

Plaintiff asks this Court to deny Defendant's ***Motion to Dismiss*** and grant his ***Motion for Summary Judgment***, including restoration of his right to own a firearm within three business days of judgment, expungement of all court records, including those in Greenbrier County, and other relief as the Court deems appropriate. (Id. at 18)

### Plaintiff's Argument for Summary Judgment

Plaintiff also moves for summary judgment and relies upon his arguments set forth in his ***Memorandum*** of law (ECF No. 20) in support of his ***Response*** to Defendant's ***Motion to Dismiss***. Plaintiff succinctly contends that the facts show that Defendant violated W. Va. Code § 61-5-27a due to her violation of W. Va. Code § 27-6A-2: Defendant caused Dr. Bobby Miller to participate in a fraudulent legal proceeding; Defendant used Dr. Miller's fraudulent report in a fraudulent official process that defamed and caused Plaintiff damages; Defendant's fraudulent conduct is not "protected" by the statute of limitations espoused in W. Va. Code § 55-2-12; Defendant's conduct has no immunity; Defendant's conduct was criminal; and this Court has authority to seal and expunge the fraudulent state records. (Id. at 1)

Plaintiff renews his prayer for relief: $25 Million Dollars "[t]o be paid at once in cash" and for all court records, files, and transcripts of all cases against Plaintiff to be turned over to him before this Court. (Id.)

In response, Defendant provides a recitation of the allegations brought by this Plaintiff in his Complaint: (1) Plaintiff is Ronald Collins, Jr.; (2) Defendant brought a false charge against Plaintiff for "terrorist threats"; (3) Defendant withheld information in violation of W. Va. Code § 27-6A-2(6)(1)(2)(4), which pertains to the commitment of persons charged or convicted of a crime; (4) Defendant caused Forensic Psychiatrist Dr. Bobby Miller to file a report causing Plaintiff to be placed at the William Sharpe Hospital; (5) Defendant used [Raleigh County Circuit Court] Indictment Number 13-F-1026 to violate Plaintiff's 4th, 5th, and 8th Amendment rights; and (6) Plaintiff was defamed because false information was released to the media to conceal eight years of harassment. (ECF No. 22 at 1-2)

Defendant argues that Plaintiff has asserted no facts in support of these allegations, or any facts as to how Defendant allegedly violated his right to due process. (Id. at 3-4) Defendant points out that during the criminal process, Plaintiff was represented by counsel, and further, Plaintiff had no objection to the psychological evaluation of Dr. Miller as demonstrated by the colloquy during the December 3, 2013 bond hearing. (Id. at 4-5; ECF No. 22-2 at 47, Transcript of Motion to Dismiss and Bond Reduction Hearing at page 46, lines 7-16) Defendant also shows that the circuit court order entered on December 30, 2013 indicates that Plaintiff's psychological evaluation by Dr. Bobby Miller would be a reevaluation to determine if Plaintiff's psychological condition had deteriorated since the prior evaluations performed by Dr. Miller and Dr. Clayman. (Id. at 5; ECF No. 22-3) The circuit court order set forth the purposes for the reevaluation and grants Defendant's motion for the evaluation; the circuit court further ordered that the parties could submit any materials deemed relevant to the reevaluation. (Id. at 5-6; Id.)

Defendant also points out Dr. Miller's report, attached to Plaintiff's ***Memorandum*** in support of his ***Response*** to the ***Motion to Dismiss*** (ECF No. 19 at 35-36), Dr. Miller noted that

Plaintiff was initially referred to him by Plaintiff's criminal defense attorney, and Plaintiff was deemed competent to stand trial and was criminally responsible for the charge of possession of child pornography. (ECF No. 22 at 6) Per Dr. Miller's report, since the initial evaluation, hence the reason for the re-evaluation, Plaintiff had been noted to display bizarre behavior and make irrational statements to others, whereupon Dr. Miller opined that Plaintiff would likely be restored to competency with inpatient psychiatric hospitalization. (Id.) Plaintiff's defense counsel could have submitted any documentation to Dr. Miller as he deemed necessary, and further, Dr. Miller advised Plaintiff that he could refuse the re-evaluation, however, Plaintiff did not and went through with it. (Id.) Defendant therefore asserts that Plaintiff was afforded proper due process in the matter. (Id.)

Defendant argues that Plaintiff's ***Motion for Summary Judgment*** must be denied and reasserts her arguments for absolute prosecutorial immunity and qualified immunity in both her professional and individual capacities she addressed in her ***Memorandum*** of law supporting her ***Motion to Dismiss***, *supra*. (Id. at 7-11) Finally, Defendant contends that Plaintiff failed to specify any defamatory statements made by Defendant, and this claim fails as a matter of law. (Id. at 11)

Defendant asks this Court to deny Plaintiff's ***Motion for Summary Judgment*** and to grant Defendant's ***Motion to Dismiss***. (Id. at 12)

In reply, Plaintiff outlines the requirements of W. Va. Code § 27-6A-2(b), the definitions provided under W. Va. Code §§ 61-5-27a and 61-5-27, and restates that Defendant violated these statutes because Dr. Miller's report lacked the appropriate date of the offense; failed to mention the arresting law enforcement officer; or contain the case number 13-F-1026 or the bound over number. (ECF No. 30 at 1-3) Plaintiff also asserts that Defendant's actions relate to his criminal matter before this Court, in case number 5:18-mj-00009, and this resulted in a violation of his 2nd

Amendment right to keep and bear arms.[13] (Id. at 4-5)

Plaintiff reasserts that Defendant violated his constitutional rights as previously alleged and directs the Court's attention to Defendant's Exhibit (ECF No. 22-2), the transcript from the hearing held on December 3, 2013, that Defendant used a fraudulent process and official proceedings to deprive Plaintiff "of due process of law at bond." (Id. at 5-6) Plaintiff next provides excerpts of the opinion delivered in U.S. v. Jones, appearing to argue that his 4th, 5th and 14th Amendment rights were violated with respect to W. Va. Code § 27-6A-2(b). (Id. at 6-7)

Plaintiff reasserts his 8th Amendment rights were violated and that he has been "a target of harassment using the Defendant's fraudulent filing under 61-5-27a(c) and (b). (Id. at 8)

Plaintiff reasserts Defendant's statements in the Register-Herald defamed him by claiming he had a mental illness, and "even if the Plaintiff did suffer from 'malignant narcissism' this is not why the Plaintiff failed the evaluation." (Id. at 8-9)

Plaintiff refers to the transcript from his bond hearing in the Raleigh County Circuit Court that Trooper Haynes was the arresting officer, but this information was not provided to Dr. Miller for the re-evaluation, that Defendant knew there was additional information that was not provided to Dr. Miller, which concerned new charges of terrorist threats. (Id. at 9-11)

Plaintiff argues that Defendant dismissed case number 13-F-1026 "without trial and after Plaintiff raised complaints over violations of" W. Va. Code § 27-6A-2(b). (Id. at 11) Plaintiff

---

[13] In support of this argument, Plaintiff cites District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), which concerned the District of Columbia's ban on handgun possession in the home and prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense; the Supreme Court held this ban violated the Second Amendment. Plaintiff also cites United States v. Jones, 117 F.Supp.2d 551 (W.D. Va. Oct. 26, 2000), where the court denied a defendant's motion to dismiss an indictment against him charging him with violation of a statute making it unlawful for any person committed to a mental institution to possess any firearm in or affecting commerce; the court held the evidence was sufficient to allege that the defendant was "committed to a mental institution" within the meaning of the statute. Finally, Plaintiff cites U.S. v. Midgett, 198 F.3d 143 (4th Cir. 1999) where the Fourth Circuit held that the defendant had been committed within the meaning of the statute prohibiting persons from possessing firearms who have previously been committed to a mental institution.

appears to argue that since Defendant dismissed case number 13-F-1026 after failing to comply with the statutory requirements under W. Va. § 27-6A-2(b), this "only adds weight" to his claim of false arrest that occurred prior to Defendant's fraudulent actions concerning Dr. Miller's report and Plaintiff's illegal commitment. (Id. at 12)

In response to Defendant's argument that Plaintiff has alleged no facts in support of his claims, Plaintiff again points to W. Va. Code §§ 61-5-27a, 27-6A-2, "or 27-6A-3" and directs the Court's attention to the following from the transcript of his bond hearing:

> As I told Mr. Dunlap, I think a more practical and constructive solution, which would benefit the defendant as well as society and perhaps put an end to this dangerous nonsense, would be to have an additional psychiatric evaluation of the defendant by his chosen psychiatrist, which was Bobby Miller[.][14]

(Id. at 12-13; ECF No. 22-2 at 10, Transcript of Motion to Dismiss and Bond Reduction Hearing at page 9, lines 15-21) Plaintiff reasserts that Defendant failed to provide Dr. Miller with factual and material evidence, therefore, his report is fraudulent. (ECF No. 30 at 14)

Plaintiff insists Defendant is not entitled to absolute immunity and argues that Pulliam v. Allen provides that "the issues must be addressed at their face value" and that Defendant's immunity ends when Plaintiff's statutory or constitutional rights are violated. (Id. at 15) Further, Plaintiff argues that Defendant does not enjoy qualified immunity and again directs the Court to the excerpt of the transcript, supra, and further, Plaintiff accused Defendant of lying during his testimony at the hearing, which shows Defendant has "a greater pattern of criminal acts under color of law". (Id. at 16) Plaintiff also takes issue with counsel for Defendant's argument that his criminal defense attorney could have provided documentation to Dr. Miller in preparation for the

---

[14] The undersigned notes that the excerpt referenced by Plaintiff is Defendant's response to Plaintiff's motion for bond reduction during the hearing in circuit court held on December 3, 2013. The circuit court asked for the State's response to Plaintiff's motion to reduce his bond, which was set at $250,000, which Plaintiff's criminal defense counsel argued was "excessive" for the charges he faced. A more thorough discussion of what transpired during the hearing held on December 3, 2013 will be addressed, infra.

re-evaluation, but this does not relieve Defendant from the requirements under W. Va. Code § 21-6A-2(b). (Id. at 17)

Finally, Plaintiff directs the Court's attention to the Register-Herald article as proof of Defendant having made defamatory statements about him. (Id. at 18)

Plaintiff renews his request for summary judgment and relief as stated, *supra*. (Id.)

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner[15] seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious, or fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327-28, 109 S.Ct. at 1833. A complaint, therefore, fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

This Court is required to liberally construe *pro se* documents, holding them to a less

---

[15] Though Plaintiff was not a "prisoner" at the time he filed his Complaint, since March 14, 2018, he has been incarcerated as a result of criminal proceedings initiated in this Court as referenced in criminal action number 5:18-cr-00068-1.

stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at *3 (N.D.W. Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)).

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) a person acting under color of State law; (2) committed an act which deprived her of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

**Prosecutorial Immunity:**

Plaintiff's claims against Defendant are wholly without merit. Prosecutors have absolute immunity for activities performed as "an officer of the court" if the conduct at issue is closely associated with the judicial phase of the criminal process. Van de Kamp v. Goldstein, 555 U.S. 335, 341-343, 129 S.Ct. 855, 860-862, 172 L.Ed.2d 706 (2009). In determining whether a prosecutor is entitled to absolute immunity, the Court must apply the "functional approach" examining the nature of the function performed. Id., 555 U.S. at 342, 129 S.Ct. at 861. It is well established that prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting Imbler, 424 U.S. at 430 - 431, 96 S.Ct. at 995). Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993) (quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995-996)). A prosecutor acts as an advocate or "officer of the court" when performing tasks, such as (1) initiating a judicial proceeding, (2) presenting evidence in support of a search warrant application, (3) conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing, (4) engaging in "an out-of-court effort to control the presentation of [a] witness' testimony," and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made." Buckley, 509 U.S. at 272, 113 S.Ct. at 2615(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995-996); Van de Kamp, 555 U.S. at 434, 129 S.Ct. at 861; Dababnah v. Keller-Burnside, 208 F.3d 467, 471-472 (4th Cir. 2000) (stating that "numerous courts have found prosecutors absolutely immune when undertaking [extradition proceedings].")

The gravamen of Plaintiff's claims appear to concern the psychological evaluation and the circumstances surrounding the hearing, and Dr. Miller's ultimate findings. Nevertheless, Defendant is entitled to absolute immunity by filing a motion with the Raleigh County Circuit Court to order a re-evaluation of Plaintiff's psychological condition, because in acting as the Prosecuting Attorney for Raleigh County, this conduct was intimately involved in the judicial phase of the criminal proceedings against Plaintiff.

Furthermore, a prosecutor is entitled to absolute immunity even if he or she "acted with an improper state of mind or improper motive." Shmueli v. City of New York, 424 F.3d 231, 237 (2nd Cir. 2005); also see Smith v. McCarthy, 349 Fed.Appx. 851, 859 (4th Cir. 2009), cert. denied, 562 U.S. 829, 131 S.Ct. 81, 178 L.Ed.2d 26 (2010); Brown v. Daniel, 230 F.3d 1351 (4th Cir. 2000)("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune.")(unpublished opinion). Indeed, this absolute immunity still applies even when a prosecutor withholds materially exculpatory evidence, and knowingly presenting perjured testimony or false or misleading evidence to the Court or grand jury. Burns, 500 U.S. at 490-92, 111 S.Ct., at 1941-42 ("A state prosecuting attorney is absolutely immune from liability for damages under § 1983 for participating in a probable-cause hearing . . .."); Imbler, 424 U.S. at 422, 96 S.Ct. 984 at 991 (citing Yaselli v. Goff, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); also see Brown v. Daniel, 230 F.3d at 1352; Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996); Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994), cert. denied, 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed2d 1068 (1995). Although prosecutors may be entitled to absolute immunity, prosecutors are

subject to criminal and professional sanctions for prosecutorial abuses. Imbler, 424 U.S. at 429, 96 S.Ct. at 994; Malley v. Briggs, 475 U.S. 335, 343, n. 5, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). It is well recognized that "[a]bsolute prosecutorial immunity 'is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" Dababnah, 208 F.3d at 471 (quoting Kalina v. Fletcher, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). As argued by Defendant, the Imbler Court determined the importance of protecting the integrity of the prosecutor's office and the judicial system outweighs the desire to afford civil redress to a wronged defendant. Imber, 424 U.S. at 427 - 429, 96 S.Ct. at 993-994.

Therefore, Defendant still enjoys absolute immunity even if, as alleged by Plaintiff, she neglected to turn over additional evidence or documents to Dr. Miller in preparation for his re-evaluation. Interestingly, the undersigned notes that Defendant did not withhold evidence or information that could even remotely be characterized as "exculpatory", indeed, Plaintiff seems to argue that Defendant did not share all the evidence against Plaintiff to Dr. Miller as demonstrated by the excerpt from the December 3, 2013 hearing:

> Ms. Keller:
>
> Your Honor, I also relayed this information to Mr. Dunlap this morning. The written motion - - we were served with a notice of a bond reduction, but the written motion did not arrive in my office until this morning.
>
> In the meantime, another judge in this circuit was notified that the [Plaintiff] was making ongoing threats against, particularly Sergeant Duckworth, and other public official even while incarcerated under the bond which followed his arrest for the prior threats against Sergeant Duckworth in particular.
>
> As a result of that information, the West Virginia State Police, with the consent of another inmate, have now recorded hours of the defendant making repeated threats confirming that he meant to make threats, at one point even saying that, he, the [Plaintiff], was bat shit crazy, end quote.

I relayed that information to Mr. Dunlap. And in light of the prior psychiatric evaluations of this [Plaintiff] and his ongoing terrorist threats, it - - the State could have kept quiet and could have obtained new warrants against the [Plaintiff]. As I told Mr. Dunlap, I think a more practical and constructive solution, which would benefit the [Plaintiff] as well as society and perhaps put an end to this dangerous nonsense, would be to have an additional psychiatric evaluation of the [Plaintiff] by his chosen psychiatrist, which was Bobby Miller - - to have that evaluation and have the Court have an opportunity to review the evaluation before there's any decision made on the motion to reduce bond.

As defense counsel recognized, the terroristic threat statute provides, quote, any person who knowingly and willfully threatens to commit a terrorist act, which includes an act in retaliation against government officials, quote, with or without the intent to commit the act, is guilty of the felony.

The complaint resulting in the new terrorist threat charges describes some of those threats[.]

(ECF No. 22-2 at 9-11; Transcript of Motion to Dismiss and Bond Reduction Hearing at pages 8-10.

It is noted that a prosecutor is not entitled to absolute immunity for "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." Buckley, 509 U.S. at 273, 113 S.Ct. at 2615 (citing Burns, 500 U.S. at 491, 11 S.Ct. at 1941-42). Thus, a prosecutor is only entitled to qualified immunity for administrative actions or investigative functions not related to trial preparation, such as holding a press conference, engaging in investigative activity prior to the establishment of probable cause to arrest, providing police officers with legal advice during the investigative phase, or acting as a complaining witness in support of a warrant application. Id.; also see Van de Kamp, 555 U.S. at 342 - 343, 129 S.Ct. at 861. The Supreme Court has explained as follows:

There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity

> should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction."

Buckley, 509 U.S. at 273, 113 S.Ct. at 2616 (internal citations omitted). Thus, a prosecutor does not have absolute immunity for a claim that he or she fabricated evidence during the preliminary investigation of an unsolved crime. Id., 509 U.S. at 275, 113 S.Ct. at 2616-2617.

Although Plaintiff initially complained of "eight years of harassment by police" and generally complains that Defendant "organized an investigation into events leading to said case" (ECF No. 2 at 5), he provides no additional details or facts to substantiate these claims, and are therefore merely conclusory. Nevertheless, as stated *supra*, Plaintiff's allegations primarily concern that Defendant engaged in fraudulent legal proceedings and caused Dr. Miller to produce a fraudulent report regarding his mental state, by failing to provide certain additional information to Dr. Miller in preparation for the psychiatric re-evaluation. Plaintiff does not specifically allege, or provide any factual support, for any claim that Defendant engaged in fraudulent activity prior to the probable cause stage of his arrest. In short, Plaintiff's claims do not specify whether Defendant's administrative actions or investigative functions were not related to trial preparation, or indeed, specify what misconduct she allegedly did before the judicial phase set in, as his claims ultimately and primarily concern her role during the judicial phase of the criminal proceedings. To reiterate, prosecutors are absolutely immune from liability in decisions to initiate prosecution and in conducting bond or revocation hearings. See Imbler, 424 U.S. at 431, 96 S.Ct. at 995 (holding that "in initiating a prosecution . . . the prosecutor is immune"). Rhodes v. Smithers, 939 F.Supp. 1256, 1269 (S.D.W. Va. Sept. 15, 1995) (District Judge Copenhaver) ("[T]he presentation of false testimony in the course of a judicial proceeding is an allegation 'for which the prosecutor is afforded absolute immunity.' ") (citing Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994)).

Accordingly, the undersigned recommends that Plaintiff's claims against Defendant be dismissed with prejudice because she is absolutely immune from suit under Section 1983.

**Statute of Limitations:**

Even assuming *arguendo* that Defendant has no immunity, absolute or otherwise, it is well-known that a Plaintiff must file a Section 1983 action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective State's statutes of limitation. See Owens v. Okure, 488 U.S. 235, 249-250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The Fourth Circuit has recognized that "in the absence of any state statute of limitations specifically applicable to suits to redress a violation of civil rights, the West Virginia limitation on personal injury actions applies." McCausland v. Mason County Bd. of Ed., 649 F.2d 278 (4th Cir. 1981), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). Under West Virginia law, the applicable period of limitation upon a plaintiff's right to file a personal injury is two years from the time the cause of action accrued. See, W. Va. Code § 55-2-12(b).[16]

Plaintiff alleges that the events that gave rise to his claim occurred between February 20, 2014 and September 11, 2016, and "8 years of harassment by police, false claims in court and publicly released evidence of corruption and false arrest in court." (ECF No. 2 at 5) However, Plaintiff does not specifically identify *when* Defendant allegedly defamed him except through his references to the documentation he attached to his ***Response*** that concerning the criminal proceedings in Raleigh County Circuit Court in December 2013. The most specific dates that

---

[16] West Virginia Code § 55-2-12 provides as follows:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

Plaintiff refers to concern the hearing surrounding his bond reduction motion and competency evaluation. Indeed, as demonstrated by Defendant, Plaintiff's earliest allegations of fraud, which ostensibly occurred during the hearing on December 3, 2013, in accordance with the pertinent West Virginia statute, Plaintiff had to file his claim no later than December 3, 2015. Presuming that Plaintiff's more recent allegations, that Defendant ostensibly committed some form of fraud via the publication of the Register-Herald article on April 15, 2014, Plaintiff had to file his claim no later than April 15, 2016. Indeed, Plaintiff's claim of defamation, when the Register-Herald published the article, had to be filed no later than April 15, 2015.[17] Because Plaintiff filed this action on February 21, 2017, his claims are time-barred, therefore meriting dismissal of his claims with prejudice.[18]

**Twombly, Iqbal and Pleadings under the Federal Rules of Civil Procedure:**

Even further assuming *arguendo* that Defendant enjoyed no immunity protections whatsoever, and that Plaintiff's claims survive the pertinent statute of limitations, Plaintiff's Complaint fails to comply with the pleading requirements in federal court.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that the Court must accept

---

[17] Plaintiff generally alleged that Defendant made defamatory statements in a "Broadcast on Television", however, he provided no dates, times, or identified the television station that supposedly televised these statements. (ECF No. 19 at 5)

[18] Plaintiff alleged additional violations committed by Defendant in his responsive pleadings that go beyond his initial Complaint, which include his allegations that Defendant's misconduct during the criminal proceedings before the Raleigh County Circuit Court resulted in violations of W. Va. Code § 61-5-27A. (ECF No. 19) For all intent and purposes, Plaintiff amended his pleadings when he alleged Defendant's misconduct caused his most recent criminal charges that are currently pending before this Court in case number 5:18-cr-00068-1; Plaintiff presently faces two counts of violating 18 U.S.C. §§ 922(a)(6), 922(g)(4). (ECF No. 27) As noted *supra*, Plaintiff alleged Defendant violated his Second Amendment right to keep and bear arms because Dr. Miller's report found him incompetent to stand trial on his State criminal charges. The undersigned notes that although the Federal Rules of Civil Procedure, specifically, Rule 15(a)(1)(A) permits a party to amend its pleadings ***once*** as a matter of course within 21 days after serving it, or within 21 days after service of a motion under Rule 12(b), Plaintiff did not file for leave to amend to include his new allegations of Second Amendment right violations. However, even if this Court would have granted leave to amend, or had Defendant consented to same, these amended pleadings not only fail to comport with the pleading requirements as discussed *infra*, but also these claims are precluded under the doctrine of absolute immunity, discussed *supra*.

as true all well-pleaded material factual allegations. <u>Advanced Health–Care Services, Inc. v. Radford Community Hosp.</u>, 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. <u>Id</u>. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." <u>Id</u>. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In other words, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. <u>Conley</u>, 355 U.S. at 45-46 (1957).

After thorough review of Plaintiff's Complaint and his responsive pleadings to Defendant's ***Motion to Dismiss***, the undersigned agrees with Defendant that Plaintiff has failed to sufficiently plead any supporting facts or provide any "plausible" allegations of fraud, defamation, or other misconduct that would entitle him to relief to survive <u>Twombly</u> and <u>Iqbal</u>. Plaintiff's claims consist

of nothing more than a compilation of a few records that were generated during the criminal proceedings in State court, and in the case of Dr. Miller's report, an incomplete record, and finally, an article published over four years ago concerning those events. Plaintiff attempts to buttress his arguments with copies of West Virginia statutes and recitation of case law, but provides nothing more than conclusory statements that Defendant committed some form of fraud and defamed him. Plaintiff's recitation of these as 'facts' in support of his claims as alleged in his initial Complaint, which he subsequently attempts to bootstrap as additional violations committed by Defendant by virtue of the criminal matter pending against him before this Court, offer nothing for this Court to infer any misconduct on part of this Defendant.

Even though Plaintiff has moved for summary judgment, as stated *supra*, he has provided no facts from which this Court could ascertain that would otherwise defeat Defendant's motion for dismissal. Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the

evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

For the reasons stated *supra*, Plaintiff's ***Motion for Summary Judgment*** must be denied. He has not properly plead his case in accordance to the requirements espoused by <u>Twombly</u> and <u>Iqbal</u>, and further, Plaintiff's basis for his ***Motion*** is a mere recitation of the same conclusory accusations against Defendant: that she committed some kind of fraud during his State criminal case proceedings. As determined *supra*, Defendant enjoyed absolute immunity from liability during Plaintiff's State criminal proceedings. Plaintiff's factual allegations are comprised of references to the case law and statutory authority from which he bases his claims, coupled with the records produced during his State criminal case. None of these constitute any proffer of specific facts of Defendant's misconduct can survive a motion to dismiss or provide any meaningful basis for deciding a motion for summary judgment.

Accordingly, the undersigned respectfully recommends that Plaintiff's claims be dismissed with prejudice.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendant's ***Motion to Dismiss***, **DENY** Plaintiff's ***Motion for Summary Judgment*** and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days

(filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: May 3, 2018.

Omar J. Aboulhosn
United States Magistrate Judge